UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Pangea Legal Services, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. Dept. of Homeland Security, *et al.*,<br><br>    Defendants. | Civil Action No. 3:20-cv-09253-JD<br><br>**JOINT STATUS REPORT;**<br>**PLAINTIFFS' REQUEST FOR STATUS**<br>**CONFERENCE**<br><br>Hearing Date:<br>Hearing Time: |
| Immigration Equality, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. Dept. of Homeland Security, *et al.*,<br><br>    Defendants. | Civil Action No. 3:20-cv-09258-JD |

## STATUS REPORT

**Joint Statement**

On January 27, 2021, the Court granted the parties' Joint Stipulation to Hold Cases in Abeyance.  In the stipulation, the parties agreed to submit a status report within 90 days of the Court's order, "updating the Court on the status of the Final Rule and policy changes or other developments, if any, that are likely to materially impact these cases." *Pangea*, ECF 75 at 2, *Immigration Equality*, ECF 60 at 2.  On April 19, 2021 the parties submitted a joint request for the cases to remain in abeyance while they continued discussions on the issues described below and to submit a status report in 30 days.  *Pangea*, ECF 81, *Immigration Equality*, ECF 63.  The Court

granted this request on April 19, 2021 and ordered the parties to file a "joint status report by May 19, 2021, advising the Court of the status of the government's review of the regulation at issue in these cases, and of any relevant policy changes or other material developments." *Pangea,* ECF 82, *Immigration Equality*, ECF 64.

For the reasons described below, Plaintiffs in both cases believe that the Government is not fully complying with the preliminary injunction and request a status conference. Plaintiffs request the opportunity to brief the issue either before or after such a status conference, depending on what the court determines would be helpful and best serve the interests of judicial economy. Defendants submit that they are fully complying with the preliminary injunction and that a status conference is unnecessary. Defendants instead believe the abeyance and preliminary injunction should remain in place with a status report due in 90 days.

If a status conference is set, the parties request that the cases remain in abeyance with the preliminary injunction in full effect until the status conference occurs. If a status conference is not set, the parties request that the cases remain in abeyance with the preliminary injunction in full effect with a status report due in 90 days, without prejudice to Plaintiffs' ability to move to seek enforcement of the preliminary injunction.

**Plaintiffs' Statement**

On January 8, 2021 this Court issued a Preliminary Injunction enjoining the Final Rule at issue in both cases. *See Pangea* ECF 66; *Immigration Equality*, ECF 55 (the "Order"). This Court ordered that Defendants were "preliminarily enjoined from ***implementing, enforcing, or applying***" the Rule at issue (emphasis added). Pursuant to stipulation and this Court's order, that preliminary injunction remains in place. *Pangea* ECF 75 ¶6, 76; *Immigration Equality*, ECF 60 ¶6, 61.

Plaintiffs believe that Defendants are not in compliance with this preliminary injunction and are, in fact, "implementing" the Rule by publishing it on their websites and linking to it without meaningfully notifying the public—as they have done in other cases—that the regulations have been enjoined, have never taken effect, and are not operative. This has directly and negatively impacted Plaintiffs who have had to expend resources to explain that the regulations linked by

Defendants are not, in fact, operative and have had to craft their educational materials to address this failing by Defendants. As Defendants note below, the purpose of a preliminary injunction is to preserve the status quo; but here, the status quo has not been fully preserved as Defendants continue to promote the enjoined rules through referral and links on their websites, which in turn has necessitated the expenditure of resources by Plaintiffs.

Further, any asylum seeker who looks at these sites would believe that the Rule is still operative. Someone who might consider herself ineligible under the enjoined version may actually be eligible under the prior version that is still in effect, but she would be chilled from seeking asylum relief absent any way to know that these regulations are not in effect. This is particularly concerning for *pro se* applicants, many of whom likely lack legal knowledge or ability to navigate to the prior, unenjoined version of the regulations through publicly available sources. Indeed, CLINIC, a Plaintiff in the *Pangea* action, recently had to walk an immigration law professor through how to find the currently operative regulations; if a professor of immigration law cannot find the currently operative regulation, it must be significantly more difficult for a *pro se* asylum seeker to do so. The parties have discussed what steps the Government is willing to take to address this issue, and Plaintiffs understand that there are no further steps the Government is willing to take.[1] Plaintiffs therefore request a status conference.

---

[1] The only steps that the Government has been willing to take have been to revise EOIR's Policy Manual, to stop the press release announcing this rule from appearing on EOIR's home page as it had through mid-April (by reducing the number of press releases visible from three to one), and to apply a banner to the press release to note that the Rule has been enjoined should someone view the press release. This is insufficient to address the issues plaintiffs have raised.

Despite the preliminary injunction, the Rule at issue in this case remains published on the Government's e-CFR website. There is no reference on that website to the Order or the fact the Rule has been preliminarily enjoined by this Court. As noted above, the Rule at issue also remains linked on the USCIS and EOIR websites, which are administered by Defendants here, with no reference to the Order or the fact the Rule has been preliminarily enjoined by this Court. *See* https://www.justice.gov/eoir/virtual-law-library (accessed May 18, 2021) (referring visitors to the e-CFR for the (enjoined) regulations and providing a link) and https://www.uscis.gov/laws-and-policy/regulations (accessed May 18, 2021) (referring visitors to the e-CFR for the (enjoined) regulations and providing a link). The refusal to take this step here is mystifying; in other similar cases where a final rule has been enjoined, the Government has agreed to place a banner or alert on the relevant websites alerting users to the fact that certain rules have been preliminarily enjoined. *See, e.g.,* United States Citizenship and Immigration Services, I-912, Request for Fee Waiver, https://www.uscis.gov/i-912 (accessed May 18, 2021).

> **Alert:** On Sept. 29, 2020, the U.S. District Court for the Northern District of California in *Immigration Legal Resource Center et al., v. Wolf, et al.*, 20-cv-05883-JWS, preliminarily enjoined DHS from implementing or enforcing any part of the USCIS Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements rule.
>
> While the rule is preliminarily enjoined, we will continue to:
> - Accept USCIS forms with the current editions and current fees; and
> - Use the regulations and guidance currently in place to adjudicate applications and petitions. This includes accepting and adjudicating fee waiver requests as provided under Adjudicator's Field Manual (AFM) Chapters 10.9 (PDF, 2.87 MB) and 10.10 (PDF, 2.87 MB).
>
> For more information, please refer to the Federal Register Notice, dated Jan. 29, 2021.

JOINT STATUS REPORT
Nos. 3:20-cv-09253-JD & 3:20-cv-09258-JD

*See, e.g.,* United States Citizenship and Immigration Services, Filing Fees, https://www.uscis.gov/forms/filing-fees (accessed May 18, 2021). [2]



In other cases, the Government has similarly been proactive to not implement enjoined final rules and to alert the public to the relevant injunction. [3]  In other circumstances, the Government has also published notices in the Federal Register alerting the public to an applicable injunction. [4]

---

[2] *See also* U.S. Dep't of Health & Human Servs., Section 1557 of the Patient Protection and Affordable Care Act, https://www.hhs.gov/civil-rights/for-individuals/section-1557/index.html (accessed May 19, 2021) (informing the public of preliminary and permanent injunctions issued against rules promulgated under Section 1557 of the Affordable Care Act).

[3] *Cf,* U.S. Dep't of Homeland Security, Notice to DHS Contractors and Subcontractors on Suspending HSAR Class Deviation 21-01 (Jan. 5, 2021), https://beta.sam.gov/opp/f9e25e85adc541faa67c2776ee5244e4/view (accessed May 17, 2021) (informing DHS contractors and subcontractors of preliminary injunction issued against executive order and enforcement of related guidance, such as HSAR Class Deviations).

[4] "USCIS Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements," 86 F.R. 7493 (Jan. 29, 2021) (informing public of the  preliminary injunctions in *Immigration Legal Resource Center et al. v. Wolf, et al.*, 20-cv-05883-JWS (N.D. Cal. 2020) and *Northwest Immigrant Rights Project, et al. v. United States Citizenship and Immigration Services, et al.* 19-cv-3282-RDM (D.D.C. 2020));; "Continuation of Documentation for Beneficiaries of Temporary Protected Status Designations for El Salvador, Haiti, Nicaragua, Sudan, Honduras, and Nepal," 85 F.R. 79208 (Dec. 9, 2020) (announcing actions to ensure compliance with preliminary injunction orders); "International Traffic in Arms Regulations: U.S. Munitions List Categories; Preliminary Injunction Ordered by a

Indeed, Judge Laurel Beeler in this District noted that it would be "negligent[]" for the Government to "fail[] to update its websites" to reflect alleged changes in immigration policy, causing those websites to misrepresent the status of a program administered by Defendant USCIS. *See S.A. v. Trump*, 363 F. Supp. 3d 1048, 1096 (N.D. Cal. 2018).

It is unclear to Plaintiffs why the Government stubbornly refuses to take any of these steps here. Every day, the Government publishes inaccurate and misleading information on its websites, displaying the enjoined rules to asylum seekers, practitioners, and groups such as Plaintiffs without providing adequate notice that the enjoined rules are not operative and have in fact been enjoined by this Court. By affirmatively serving incorrect information through their websites, publishing and linking to the enjoined rules without warning or notice of the injunction and not linking to the operative rules, Defendants are implementing the enjoined rule in violation of this Court's injunction.

Since the most recent status report filed with the Court, the parties have met and conferred in an attempt to resolve this issue and have now reached an impasse. The Government has stated that it will do nothing more to prevent misleading publication of or linking to the enjoined rule. Even if the Government has not "applied" the Rule in any specific case (which would be difficult for Plaintiffs to know, given the nature of immigration proceedings), Plaintiffs believe that the Government continues to "implement" the Rule by publishing and linking to the enjoined rules. Plaintiffs continue to expend resources to explain that the information available on Defendants' websites and other Government websites such as the eCFR is incorrect in light of the Order and to assist staff members and attorneys in finding the regulations that are still operative in light of the Order. It is difficult to find the currently-operative regulations because there is not a direct link to them from the current location of the regulation on the Government's websites and because the currently-operative regulations are only available in difficult-to-use and difficult-to-access PDFs. The government's misleading publication of and linking to the enjoined rule also likely has a chilling effect on asylum seekers, deterring them from seeking the relief for which they may be eligible under the currently operative regulations.

Federal District Court," 85 F.R. 18445 (Apr. 2, 2020); "Procedures To Consider Retention or Withdrawal of the Exclusion of Bifacial Solar Panels From the Safeguard Measure on Solar Products," 85 F.R. 4756 (Jan. 27, 2020).

As the Government has stated that it will take no further action to address this issue, Plaintiffs believe intervention and direction by the Court is necessary and request a status conference to seek guidance from the Court. Plaintiffs are also willing to provide briefing to the Court either before a status conference, if the Court believes it would be helpful, or after a status conference, if the Court believes conferring with the parties can help hone the issues prior to any briefing, whichever the Court believes will best promote judicial economy.

**Defendants' Statement**

On January 8, 2021 this Court issued a Preliminary Injunction enjoining the Final Rule at issue in both cases. *See Pangea* ECF 66; *Immigration Equality*, ECF 55 (the "Order"). This Court ordered that Defendants were "preliminarily enjoined from implementing, enforcing, or applying" the Rule at issue. Pursuant to this Court's order and stipulation, that preliminary injunction remains in place. *Pangea*, ECF 75 ¶¶ 6, 76; *Immigration Equality*, ECF 60 ¶¶ 6, 61.

Defendants maintain that they are in full compliance with the Court's preliminary injunction order. The Departments have provided a copy of the preliminary injunction order and communicated the terms of the injunction to their employees, and Plaintiffs offer no evidence has been provided that the Rule has been applied to any person. Importantly, "[a] preliminary injunction . . . is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Sierra On-Line, Inc. v. Phx. Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). "The 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" *Id.* (quoting *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009)). Thus, the preliminary injunction order halts the Rule and prevents its application by Defendants and those acting under Defendants' authority. Because Plaintiffs have not identified any instances in which Defendants have applied the Rule, they fail to demonstrate that Defendants have violated the Court's preliminary injunction order.

In any event, Plaintiffs' claim that the Government is not complying with the text of the preliminary injunction order is incorrect. Furthermore, a status report is not the proper vehicle for litigating this issue and to the extent Plaintiffs seek to advance this argument, the Government

respectfully requests that the Court allow for full briefing of these issues prior to any ruling. Defendants nevertheless submit that: (1) Plaintiffs' reading of the term "implement" is incorrect; (2) Defendants have published corrective information to the websites they control as Plaintiffs have requested in a show of good faith; and (3) Defendants do not control the eCFR and only a subsequent final rule can change its contents.

First, Plaintiffs' reading of the term "implement" goes beyond the common use of that term. The Oxford English Dictionary defines "implement" when used as a transitive verb as "[t]o complete, perform, carry into effect (a contract, agreement, etc.); to fulfil (an engagement or promise)." *Implement*, OED Online (March 2021), *available at* http://www.oed.com/view/Entry/92452. Merriam-Webster's Dictionary similarly defines "implement" as "carry out" or "accomplish," especially "to give practical effect to and ensure of actual fulfillment by concrete measures." *Implement*, Merriam-Webster.com Dictionary, *available at* https://www.merriam-webster.com/dictionary/implement. Plaintiffs claim that the Defendants have published the Rule on their websites and linked to it and thus have "implemented" the Rule. But Defendants have not published the Rule to their website, as discussed below, and Plaintiffs do not explain how maintaining a pre-existing link to the electronic version of the official Code of Federal Regulations (CFR)—an editorial compilation of the CFR maintained on a website operated by an agency of the legislative branch of the federal government that is not part of this lawsuit—is "carrying into effect," "performing," or "accomplishing" the enjoined Rule.

Second, to the extent Defendants' websites made reference to the enjoined Rule, they have altered their websites to inform the public of the injunction of the Rule. After Plaintiffs' counsel raised this issue with Defendants' counsel, Defendants and counsel reviewed EOIR's and USCIS's websites to determine whether any webpages referenced the enjoined Rule. EOIR's website included a press release announcing the Rule that was originally shown on EOIR's main website at https://www.justice.gov/eoir. In a good-faith effort to address Plaintiffs' concerns regarding notice to the public, EOIR changed the web part showing recent news items to show only the most recent item. The press release had previously been shown on this "Recent News" web part because

the part displayed the three most recent news events. Limiting the web part to showing only the most recent news event bumped the press release to a second page.



EOIR also placed a banner on that press release as follows:

> *Update: This rule was enjoined in its entirety on January 8, 2021. See Pangea Legal Servs., et al., v. U.S. Dep't of Homeland Sec., et al., No. 3:20-cv-09253 (N.D. Cal.) ("Pangea II") and Immigration Equality, et al. v. U.S. Dep't of Homeland Sec., et al., No. 3:20-cv-09258 (N.D. Cal.).*

See https://www.justice.gov/opa/pr/departments-justice-and-homeland-security-publish-final-rule-procedures-asylum-and and image below:



EOIR took additional steps in an effort to address Plaintiffs' concerns and provide notice to the public about the Rule's current status. In a Policy Memorandum displayed on EOIR's website as part of EOIR's Policy Manual, *see* https://www.justice.gov/eoir/eoir-policy-manual/vii, EOIR rescinded a prior Policy Memorandum relating to this Rule. Specifically, Policy

Memorandum 21-22, Cancellation of Policy Memorandum 21-09, *available at* https://www.justice.gov/eoir/book/file/1394341/download, rescinded Policy Memorandum 21-09, Guidance Regarding New Regulations Governing Procedures for Asylum and Withholding of Removal and Credible Fear and Reasonable Fear Reviews, *available at* https://www.justice.gov/eoir/book/file/1394341/download. The reason provided for the rescission is this Court's preliminary injunction:

> PM 21-09 was issued in relation to the publication of the final rule titled "Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review," 85 Fed. Reg. 80,274 (Dec. 11, 2020), which was enjoined until further court order before taking effect. *See Pangea Legal Services, et al. ("Pangea II"), v. DHS, et al.*, No. 3:20-cv-9253 (N.D. Cal.); *see also Immigration Equality, et al., v. DHS, et al.*, No. 3:20-cv-9258 (N.D. Cal.); *Human Rights First v. Wolf, et al.*, No. 1:20-cv-3764 (D.D.C.); *Tahirih Justice Center, et al., v. Gaynor*, et al., No. 1:21-cv-0124 (D.D.C.). The revocation of PM 21-09 is consistent with the court order in Pangea II and with Executive Orders 14010 and 14012 (Feb. 2, 2021).

Policy Memorandum 21-09 is no longer linked on the Policy Memorandum portion of EOIR's Policy Manual.

Plaintiffs assert that Defendants have refused "to place a banner or alert on the relevant websites alerting users to the fact that certain rules have been preliminarily enjoined" and use an example from USCIS's website about USCIS's fee waiver form as what they want Defendants to do. Plaintiffs do not cite any authority for the proposition that Defendants must undertake this specific action to comply with a preliminary injunction order. Nevertheless, this is precisely what EOIR did—EOIR placed a banner on the relevant website where it announced the Rule. USCIS did not take any action with respect to the instant Rule because its website does not mention the Rule at all and doing so now, while the Rule is enjoined, may create the very confusion Plaintiffs seek to avoid. Notably, Plaintiffs use the USCIS example to ask for something else entirely—that Defendants place a banner on a page linking to the eCFR, which in turn is a webpage maintained by a different agency. But USCIS did not do this for the fee waiver rule in Plaintiffs' example. Instead, like EOIR did here, USCIS updated the information on its own website. Furthermore,

Plaintiffs fail to explain how placing a banner noting the injunctions on the pages where EOIR and USCIS link to the eCFR would provide clarity and not lead to more confusion.

Plaintiffs similarly do not explain how publishing a notice in the Federal Register would remedy any of the confusion they allege. Importantly, the Rule has been temporarily enjoined—it has not been rescinded in accordance with a rulemaking process under the Administrative Procedure Act which generally must be done by publishing regulatory changes in the Federal Register. And doing so would, as a general matter, itself cause confusion in cases of preliminary injunctions that are by their nature temporary, or could quickly become unwieldy where injunctions are limited by geographic locations or to specific plaintiffs. Including the banners only on the relevant pages does not present the same confusion concern.

Third, as Defendants have explained to Plaintiffs, Plaintiffs' complaint truly lies with the agencies enforcing the Administrative Committee of the Federal Register's regulations, the Office of the Federal Register (OFR), which is part of the National Archives and Records Administration, an independent agency, and the Government Printing Office, a legislative agency that is not part of the Executive Branch. It is their regulations that require agencies to issue rules to remove enjoined text. *See* 1 C.F.R. Chapter 1. Per OFR, the eCFR "content must reflect what is published in the Federal Register." Electronic Code of Federal Regulations, Frequently Asked Questions, https://www.ecfr.gov/cgi-bin/ECFR?SID=750d1a6d2597286d26dcb1001d6fba36&mc=true&page=faq (last visited May 19, 2021). Only if and when a subsequent final rule amends or rescinds the regulations will the official Code be updated to remove the Rule's language. To be sure, any subsequent rulemaking or rulemakings will take time, generally including the deliberations necessary to draft the proposed regulatory text, an economic impact analysis, a Notice of Proposed Rulemaking, a comment period that allows the public sufficient opportunity to participate, consideration of the comments received, and additional deliberations and drafting. Notably, Plaintiffs challenged this Rule on the ground that it was rushed and the agencies did not fully comply with the procedural requirements of the APA. These same concerns should counsel against requiring the Departments to take the action Plaintiffs request without complying with the procedural requirements of the APA.

At bottom, the Departments have complied with the Court's preliminary injunction. At Plaintiffs' request, the Departments ensured that the information provided on their websites adequately reflect the current status of this Rule. The Departments are also continuing to review this Rule and engage in considered deliberation of rulemaking efforts that may amend some or all of the provisions enacted by this Rule. *See, e.g.*, Exec. Order No. 14,010 (2021) ("The Attorney General and the Secretary of Homeland Security shall . . . within 270 days of the date of this order, promulgate joint regulations, consistent with applicable law, addressing the circumstances in which a person should be considered a member of a "particular social group," as that term is used in 8 U.S.C. 1101(a)(42)(A)"). For this reason, Defendants believe the current abeyance and preliminary injunction should stay in effect and that a 90-day status report is prudent. At the end of those 90 days, Defendants expect to be able to provide some additional information as to the proposed timeline for any new regulatory efforts in this area. If more information is available before the status report is due, Defendants will provide that information to Plaintiffs and the Court. Defendants do not oppose a status conference to discuss the Plaintiffs' challenges but believe it is unnecessary as Defendants are fully complying with the Court's order.

Respectfully submitted,

By: */s/ Naomi A. Igra*
NAOMI A. IGRA
Sidley Austin LLP
555 California St., Suite 2000
San Francisco, CA 94104
Tel. (415) 772-1200
naomi.igra@sidley.com

*Counsel for Pangea Plaintiffs*

By: */s/ Omar Gonzalez-Pagan*
OMAR GONZALEZ-PAGAN
Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY 10005
Tel. (212) 809-8585
ogonzalez-pagan@lambdalegal.org

By: */s/ Christina P. Greer*
CHRISTINA P. GREER
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel. (202) 598-8770
Christina.P.Greer@usdoj.gov

*Counsel for Defendants*

*Counsel for Immigration Equality Plaintiffs*

Dated: May 19, 2021